Zobel, J.
Gaudet, the Waltham building inspector, seeks to stop Charlesworth and Buzzard from using their home at 78 Harrington Road (“the residence”) as a venue for Charlesworth’s photography business in purported violation of the Waltham Zoning Ordinances (“the Zoning Ordinances”).
Charlesworth, in turn, appeals from the Waltham City Clerk’s failure to issue a constructive grant of an occupancy permit, and from the Waltham Zoning Board of Appeals (the “Board”) denying her petition to order Gaudet to issue an occupancy permit.
The parties have filed cross motions for summary judgment which address all issues in the consolidated cases.
Gaudet is responsible for enforcing the Zoning Ordinances. The residence is located in a Residence A-2 Zoning District (business use prohibited unless a “customary home occupation” as determined by the building inspector, and issuance of an occupancy permit).
Before purchasing the residence Charlesworth and Buzzard discussed the matter with Gaudet and then, at his request, sent a letter detailing their intentions: Charlesworth wished to operate a photography business out of the residence with only 20% of the actual work ever to be performed on the premises, viz., readying the negatives for processing (although no processing at the residence), bookkeeping, art work, framing individual photographs, product photography, and scheduled studio sittings. The letter also promised that the resultant traffic would not exceed that generated by other home businesses in the immediate area.
Charlesworth and Buzzard thereupon made an offer to purchase the residence, contingent upon Gaudet’s approving their proposal. On April 3, 1996, Gaudet wrote to Charlesworth granting permission to operate a home business from the residence, subject to three conditions: (1) issuance of a building permit to renovate the basement and/or garage; (2) submission of a parking plan for three cars; and (3) application for a sign permit complying with the zoning requirements. The letter also specified that the home business use was “subject to review” if it caused conditions detrimental to the neighborhood (emphasis in original).
Charlesworth and Buzzard took title to the residence and moved in. Three days later, pursuant to a building permit, renovation of the garage and basement began. They moved the photographic studio into the residence and, one month after renovations started, began to operate the business there.
Almost immediately, Gaudet began receiving numerous complaints from area residents: the high volume of traffic generated by the photography business; the large number of employees seen at the residence; the excessive number of truck deliveries made on a daily basis; and the large number of parked vehicles. The neighbors expressed concern for the safety of neighborhood children and the degradation of the neighborhood’s residential character.
The complaints specified: (1) an average of two or three parked vehicles, at times reaching six or nine; (2) one or two daily package pickups and deliveries, plus additional mail deliveries; (3) a sign in front of the residence violating zoning ordinances; (4) neighborhood driveways blocked; (5) more than three employees working at the residence; (6) customers constantly coming and going; and (7) business activity at the residence exceeded the allowed 25%.
Having conducted an investigation, Gaudet determined that the use was not as described in Charlesworth’s original letter. He found the use to be more intense than a traditional home occupation; it significantly detracted from the neighborhood’s residential character.
After Gaudet ordered Charlesworth not operate the photography business, they futilely tried to persuade him that any alleged high volume of traffic during the *122 prior month was not likely to continue, because it resulted solely from (a) the temporary presence of the construction crews; and (b) visits from friends and relatives to see their new baby.
On August 27, 1996, the renovation work passed final inspection. Responding to a request for the occupancy permit, Gaudet told Charlesworth to “stay invisible for a while” and not to have “excessive visitors.”
About two months later, Gaudet issued an occupancy permit restricting use of the residence to the representations in Charlesworth’s original letter. Charlesworth and Buzzard claim that these restrictions effectively prevented them from meeting clients at their home. They did not sign this occupancy permit because they believed the inclusion of the restrictions in effect denied them the permit they sought. They particularly objected to the prohibition of client meetings, sittings, and schedulings.
On November 18, 1996, Charlesworth filed an appeal with the Waltham City Clerk; it was stamped as received by the City Clerk’s Office on that date.
On November 19, 1996, Gaudet issued a second cease and desist order for purported violation of the original cease and desist order, warning Charlesworth and Gaudet of a potential $300 daily fine, retroactive to August 2, 1996. On December 9, 1996, Gaudet issued a third cease and desist order; two weeks later, he commenced a civil action.
The Zoning Board proceedings move forward. After Charlesworth supplemented her pending appeal, the Board held a meeting attended by over 50 neighbors. After nearly two hours of debate, the Board decided to suspend the meeting and reconvene two weeks later. On March 18, 1997, the Board met again and voted, 3-2, that Charlesworth and Buzzard had timely filed their November 18, 1996 appeal and that the matter should be heard on the merits. However, following discussion concerning the sufficiency of the vote, the chair ruled that approval of any action required a 4-1 vote. This ruling effectively reversed the earlier determination of timely filing.
Shortly thereafter, Charlesworth and Buzzard’s attorney (“D’Angio”), attempting to obtain a copy of the Zoning Board’s Rules and Regulations from the Waltham City Clerk, was informed that no rules and regulations were on file. About a week later, the Waltham Ci1y Clerk told D’Angio that the Zoning Board’s Rules and Regulations had been filed for the first time.
D’Angio then obtained a copy and immediately wrote the Waltham City Clerk seeking a constructive grant of the occupancy permit, citing G.L.c. 40A, §15 (the Zoning Board must “hold a hearing on any appeal, application or petition within sixty-five days from the receipt of notice by the board of such appeal, application or petition”). D’Angio also argued that because (a) as of February 26, 1997, no decision had been made on Charlesworth’s appeal; and (b) 100 days had passed from the filing of the appeal, she was entitled to the issuance of a constructive approval of the appeal. On April 23, 1997, the Waltham City Clerk denied the request for a constructive grant as the request had not been filed within 14 days of the expiration of either the 65-day or 100-day statutorily-required period, G.L.c. 40A, §15.
On April 15, 1997, the Zoning Board met again and considered a motion to reopen the hearing on Charlesworth’s appeal. The Board voted, 3-2, to reconsider its previous vote and to reschedule a hearing on the appeal. In a triumph of proceduralism, the Board also voted that a 4-1 vote was necessary, thus negating the previous vote, but then (one former dissenter switching) repassed the vote to reconsider and reschedule..
On May 5, 1997, the Zoning Board met again and voted, 4-1, to deny Charlesworth’s supplement, reasoning that it was a separate appeal, not timely filed. The Zoning Board also voted that the original appeal of November 18, 1996 was not on the table.
The next day, the Board filed a Notice of Decision with the Waltham City Clerk’s office. This gave Charlesworth and Buzzard then 20 days to bring the Board’s decision before the Superior Court, G.L.c. 40A, §17. They commenced the instant action May 13, 1997.
Charlesworth argues that she is entitled to a constructive grant of an occupancy permit because the Board failed to make a decision within 100 days after she filed her appeal.
The decision of the board shall be made within one hundred days after the filing of an appeal, application, or petition . . . Failure by the board to act within said one hundred days or extended time, if applicable, shall be deemed to be the grant of the appeal, application, or petition. The petitioner who seeks such approval by reason of the failure of the board to act within the time prescribed shall notify the city or town clerk, in writing, within fourteen days from the expiration of said one hundred days or extended time, if applicable, of such approval. G.L.c. 40A, §15.
The Zoning Board did fail to act in a timely manner on the November 18, 1996 appeal of the denial of the occupancy permit. However, Charlesworth had 14 days following the 100-day period within which to apply for the constructive grant. She did not take advantage of this opportunity. Charlesworth is therefore not entitled to a constructive grant of the occupancy permit.
Charlesworth argues that the Board’s failure to file its rules and regulations with the City Clerk, G.L.c. 40A, §12, has prejudiced her because the requirements for appeal were not available prior to the November 18, 1996 filing of her appeal. The statute, §12 is directory, not mandatory, Kiss v. Board of Appeals *123 of Longmeadow, 371 Mass. 147, 157 (1976). When the statute “relates only to the time of performance of a duly by a public officer and does not go to the essence of the thing to be done, it is only a regulation for the orderly and convenient conduct of public business and not a condition precedent to the validity of the act done,” id. at 157. Under the circumstances at bar, the Board’s failure to file its rules and regulations with the City Clerk did not prejudice Charlesworth and is therefore immaterial to the present issues.
Charlesworth claims that because she relied on Gaudet’s representations to her detriment, Gaudet, the Board, and the City of Waltham should be es-topped to deny her occupancy permit. Estoppel is not a defense to an action to enforce municipal bylaws or zoning ordinances, even in the face of a substantial financial investment, Cape Resort Hotels, Inc. v. Alcoholic Licensing Board of Falmouth, 385 Mass. 205, 224 (1982); see also Town of Seekonk v. Anthony, 339 Mass. 49, 55 (1959).
Gaudet claims Charlesworth’s use of the residence: is more intensive than uses identified as customary home occupations; is detrimental to the neighborhood; and does not qualify as a customary home occupation under the Zoning Ordinances. Charlesworth and Buzzard claim that there are disputed issues of material fact such as whether traffic to the neighborhood has increased and, if so, whether this is attributable to their photography business. In addition, the defendants posit another material issue of disputed fact, viz., whether defendant’s use of the residence as a business is overly intensive in a residential neighborhood.
The disputed issues of material fact, namely, the nature and extent of the use, make summary judgment inappropriate.
Charlesworth and Buzzard had 30 days to appeal the denial of the occupancy permit, that is, to file their appeal with the City Clerk.
Any appeal under Section eight to a permit granting authority shall be taken within thirty days from the date of the order or decision which is being appealed. The petitioner shall file a notice of appeal specifying the grounds thereof, with the city or town clerk, and a copy of said notice, including the date and time of filing certified by the town clerk, shall be filed forthwith by the petitioner with the officer or board whose order or decision is being appealed, and to the permit granting authority, specifying in the notice grounds for such appeal. G.L.c. 40A, §15.
Gaudet presented a restrictive occupancy permit to Charlesworth and Buzzard on October 18, 1996. Considering the restrictions an effective denial of the permit, Charlesworth and Buzzard filed an appeal on November 18, 1996. Gaudet contends that the appeal was not timely, because after filing with the City Clerk, Charlesworth and Buzzard did not file a copy of the appeal with the Zoning Board of Appeals, G.L.c. 40A, § 15. Charlesworth argues that her filing was sufficient because she filed her appeal with the Waltham City Clerk, with Gaudet, the building inspector, as well as with the Waltham Law Department. The appeal was stamped as received on November 18, 1996 by the City Clerk’s office. On March 18, 1997, the Board voted 3-2 that the appeal was timely filed but after determining that a vote of 4-1 was required, the Board decided the appeal was not timely filed.
The Waltham City Clerk, the building inspector, ánd the Waltham Law Department all received timely notice of the appeal. The record does not suggest when the Zoning Board received notice. However, nothing indicates that the Board was prejudiced by the delay (if delay there was) in immediate notification.
In a zoning appeal, the superior court has the power to remand the case to the Board of Appeals for further proceedings, Roberts-Haverhill Associates v. City Council of Haverhill, 2 Mass.App.Ct. 715, 718 (1974), a disposition particularly appropriate here, the Board having not heard the merits of Charlesworth and Buzzard’s appeal and not having made any findings of fact. Moreover, the zoning issues lie within the specialized expertise and local knowledge of the Board.
ORDER
Accordingly, it is Ordered, that both pending motions for summary judgment be, and the same are Denied; and it is Further Ordered, that the subject of both Complaints herein be, and the same hereby is, Remanded to the Waltham Zoning Board of Appeals for such further proceedings on the merits of Charlesworth and Buzzard’s appeal of the denial of an occupancy permit, as may be consistent with the Court’s Memorandum herein, the same to be commenced within 60 days of the date of this Order.