SIDNEY GOROVITZ & others[1] *vs.* PLANNING BOARD OF
NANTUCKET.

Nantucket. December 4, 1984. — March 12, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Attorney at Law,* Attorney as witness. *Witness,* Attorney as witness.
*Partnership,* General partner.

A general partner in a limited partnership, who was also the partnership's
legal counsel, was entitled to represent the partnership in its action
seeking annulment of a decision of a municipal planning board, even
though he intended, at the trial of the action, to give testimony on matters
material to the partnership's claims. [248-250]

CIVIL ACTION commenced in the Superior Court Department
on May 26, 1982.

A motion to prevent the plaintiffs' counsel from testifying
at trial was heard by *John T. Ronan,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Joseph P. Gibbons* for the plaintiffs.
*John C. Foskett* for the defendant.

ABRAMS, J. This case poses the question whether a general
partner of a limited partnership, who serves as the partnership's
legal counsel and who is a named plaintiff in an action, may
represent the partnership in that action if he intends to testify
at trial. We conclude that, under Rule 3:07 of the Rules of the
Supreme Judicial Court (1981) and G. L. c. 221, § 48,[2] he
may do so.

---

[1] Akira Yamashita, Nobutaka Ashihara, George T. Tobey, and Donald
Jemmott, general partners of the Nantucket Collaborative, a Massachusetts
limited partnership. These general partners are nominal parties. See *Gordon*
v. *Medford,* 331 Mass. 119, 124 (1954); *Shapira* v. *Budish,* 275 Mass.
120, 126 (1931); J.R. Nolan, Civil Practice § 160 (1975). On the record
before us, they have no interest which differs from that of Gorovitz or the
partnership.

[2] General Laws c. 221, § 48, provides: "Parties may manage, prosecute
or defend their own suits personally, or by such attorneys as they may engage;

The case is submitted on a statement of agreed facts. The plaintiffs are general partners of the Nantucket Collaborative, a limited partnership owning a forty-five acre parcel of land in Nantucket. In December, 1981, the plaintiffs applied to the Nantucket planning board (board) for issuance of a special permit for construction of a commercial development on the land. The application was denied on May 3, 1982, and a motion to reconsider was subsequently denied. On May 26, 1982, the plaintiffs brought an action in the Superior Court pursuant to G. L. c. 40A, § 17, alleging that denial of their application was outside the scope of the board's authority and that the board's deliberations and decision were arbitrary and prejudicial. The plaintiffs sought an annulment of the board's decision, and compensatory and punitive damages.

Sidney Gorovitz, a named plaintiff, had been a general partner in the Nantucket Collaborative, as well as its legal counsel, since its inception. Furthermore, as "the only one of the Plaintiffs who participated in the Nantucket Planning Board meetings which led to the events surrounding Plaintiffs' claims [Gorovitz was] clearly the Plaintiffs' key material witness, and intend[ed] to testify at trial." On March 9, 1983, the board filed a motion for an order preventing plaintiffs' counsel from testifying as a witness at trial, contending that DR 5-101(B) and DR 5-102(A),[3] "specifically prohibit an attorney from acting in the dual role of counsel and witness on behalf of his clients."[4] The judge

but not more than two persons for each party shall, without permission of the court, be allowed to manage any case therein."

[3] See S.J.C. Rule 3:07 (1) and (2), as appearing in 382 Mass. 768 (1981).

[4] Supreme Judicial Court Rule 3:07, DR 5-102 (A), as appearing in 382 Mass. 780 (1981), provides in full:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B) (1) through (4)."

Supreme Judicial Court Rule 3:07, DR 5-101(B) (1)-(4), as appearing in 382 Mass. 779 (1981), provides in full:

allowed the motion, finding "no showing of any exceptional circumstance which would operate to permit the dual role of witness-advocate herein sought." The judge allowed Sidney Gorovitz to "withdraw as counsel for plaintiffs in or within 30 days . . . if successor counsel file an appearance herein, in which event nothing would prevent [Gorovitz's] testimony as a witness thereafter."

In response to the plaintiffs' request for clarification, the judge instructed the parties on March 28, 1983, that his order pertained equally "to any law partner or associate of Sidney Gorovitz"; that Mr. Gorovitz could not testify at trial unless he and his law firm withdrew as counsel prior to April 25, 1983; and that the disqualification of Mr. Gorovitz applied not only to his representation of the other named plaintiffs, but to his appearance pro se as well. The order was stayed by a single justice of the Appeals Court, pending review by the full bench. We transferred the case to this court on our own motion.[5] We vacate the disqualification order.

Mr. Gorovitz convincingly argues that this court's decision in *Borman* v. *Borman,* 378 Mass. 775 (1979), establishes his right to represent the Nantucket Collaborative despite the constraints of DR 5-101 and DR 5-102. We agree. "To apply DR 5-102 when the testifying advocate is a litigant in the action

"A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

"(1) If the testimony will relate solely to an uncontested matter.

"(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

"(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

"(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

[5] The plaintiffs' appeal from the order disqualifying Sidney Gorovitz as counsel is properly before us for determination under the doctrine of present execution. See *Borman* v. *Borman,* 378 Mass. 775, 779-781 (1979) (disqualification order is conclusive of party's right to counsel of his choice and therefore effectively unreviewable on appeal from judgment).

miscomprehends the thrust of the rule. Disciplinary Rule 5-102 regulates lawyers who would serve as counsel and witness for a party litigant. It does not address that situation in which the lawyer *is* the party litigant. Any perception by the public or determination by a jury that a lawyer litigant has twisted the truth surely would be due to his role as a litigant and not, we would hope, to his occupation as a lawyer. . . . As a party litigant, moreover, a lawyer could represent himself if he so chose. G. L. c. 221, § 48. Implicit in the right of self-representation is the right of representation by retained counsel of one's choosing. A party litigant does not lose this right merely because he is a lawyer and therefore subject to DR 5-102" (emphasis in original) (citations omitted). *Borman, supra* at 788-789. Mr. Gorovitz is a party litigant, and his right to appear pro se is thus established.

The board, however, attempts to evade the ineluctable implication of *Borman* by arguing that Mr. Gorovitz is not, in fact, acting pro se. They contend that he is a litigant in this action in name only and is thus not appearing pro se. They maintain that he is representing not himself but the other named partners, and that, in this posture, the *Borman* rule ought not apply.

This argument misapprehends the role of a general partner in a limited partnership as well as the nature of this cause of action. It is true that, as a matter of pleading, "[w]ith certain exceptions . . . all partners must be parties to a suit involving partnership rights." *Shapira* v. *Budish,* 275 Mass. 120, 126 (1931). See *Gordon* v. *Medford,* 331 Mass. 119, 124 (1954). But that rule does not signify that Mr. Gorovitz's interest in the instant action is based only on a formality. A general partner of a limited partnership possesses "the rights and powers . . . of a partner in a partnership without limited partners." G. L. c. 109, § 24, as appearing in St. 1982, c. 202, § 1. Mr. Gorovitz's interest, moreover, does not perceptibly differ from the interests of the other named partners in this action. The limited partnership here owns land in the name of the partnership. See G. L. c. 109, § 6; G. L. c. 108A, § 8 (3). The other named plaintiffs and Mr. Gorovitz have an identical interest in maximizing the profitability of the partnership's investment in that land.

The high costs of attorney disqualification on litigants[6] and on the court system[7] militate against the indiscriminate allowance of disqualification motions. Thus, "[w]hen a lawyer, exercising his best judgment, determines that his employment will not bring him into conflict with the code, disqualification may occur only if the trial court determines that his continued participation as counsel taints the legal system or the trial of the cause before it." *Borman* v. *Borman, supra* at 788. There is no basis here on which to conclude that Mr. Gorovitz's representation of the Nantucket Collaborative threatens either the integrity of the legal system or the vigorous prosecution of the partnership's cause of action. This is clearly an instance in which "a long or extensive professional relationship with a client may have afforded a lawyer, or a firm, such an extraordinary familiarity with the client's affairs that the value to the client of representation by that lawyer or firm in a trial involving those matters would clearly outweigh the disadvantages of having the lawyer, or a lawyer in the firm, testify to some disputed and significant issue." ABA Comm. on Ethics and Professional Responsibility, Formal Op. 339 (1975).

We vacate the judge's disqualification order and remand to the Superior Court for further proceedings.

*So ordered.*

---

[6] In his order, the judge found "no showing of any exceptional circumstance" which would prevent the partnership from obtaining other counsel. He stated: "Certainly, reasonable arrangement with a willing trial advocate could be made." In view of our holding, we need not reach the question of "substantial hardship" under DR 5-101(B)(4). We note, however, that the only assets of the Nantucket Collaborative evident on the record are its real estate holdings in Nantucket. Insisting that the plaintiffs encumber that realty to procure a new lawyer to litigate their claim imposes a significant burden on them, if not a "substantial hardship." See Brown & Brown, Disqualification of the Testifying Advocate — a Firm Rule?, 57 N.C. L. Rev. 597, 620 (1979).

[7] Court resources are sorely taxed by the increasing use of disqualification motions as harassment and dilatory tactics. See *Borman* v. *Borman, supra* at 787-788. See also *Serody* v. *Serody,* 19 Mass. App. Ct. 411, 414 (1985); Brown & Brown, *supra* at 621; Note: Prospective Waiver of the Right to Disqualify Counsel for Conflicts of Interest, 79 Mich. L. Rev. 1074, 1074-1075 (1981); Developments in the Law — Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1285 (1981).